IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY C. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 11-1048-JDT-egb |
| | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On February 22, 2011, Plaintiff Timothy C. Watson, who is currently an inmate at the Whiteville Correctional Facility in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 3.) On May 30, 2012, the Court issued an order dismissing portions of the complaint and directing the Clerk to issue process for the remaining Defendant, Darlene Mathews. Mathews is the librarian at the Hardeman County Correctional Facility ("HCCF"), where Plaintiff was formerly housed. (ECF No. 17.) HCCF is owned and operated by the Corrections Corporation of America ("CCA").

Defendant filed a motion for summary judgment on January 30, 2014. (ECF No. 52.) After being granted an extension of time (ECF No. 54), Plaintiff responded by filing a cross-motion for summary judgment on April 30, 2014 (ECF No. 55). Defendant responded to the cross-motion (ECF No. 56), and Plaintiff filed a reply (ECF No. 58).

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[1] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

---

[1] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In support of the motion for summary judgment, Defendant has submitted her declaration. (Mathews Decl., ECF No. 52-3.) In support of his cross-motion for summary judgment and in opposition to Defendant's motion, Plaintiff has submitted his own declaration (ECF No. 55 at 6-7) along with various exhibits (ECF Nos. 55-1, 55-2, & 55-3).

The factual allegations in the complaint regarding Defendant Mathews are minimal. Plaintiff alleges: "Defendant Darlene Mathews violated the 1st and 14th Amed. [sic] by repeatedly dening [sic] the plaintiff access to legal aides, legal material, and the contract (CCA) attorney, therefore causing the plaintiffs [sic] statue [sic] of limitations to expire on plaintiffs [sic] writ of certiorari in this cause. Appox. [sic] 9-15-10." (ECF No. 1 at 2.)[2]

---

[2] In the May 30, 2012, order, the Court stated that "Plaintiff presumably means that he was unable timely to file a petition for a writ of certiorari in the Chancery Court for Davidson County, Tennessee, challenging his disciplinary conviction." (ECF No. 17 at 6.)

Plaintiff's claims against Mathews implicate the First Amendment right to access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977). In *Bounds*, the Supreme Court held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.

Defendant first contends she is entitled to judgment as a matter of law because the First Amendment right of access to the courts does not apply to prisoners who are challenging only a prison disciplinary conviction, relying on *Lewis v. Casey*, 518 U.S. 343 (1996), and *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999):

> It is well established that prisoners have a constitutional right of access to the courts. . . .
> This is not a generalized "right to litigate" but a carefully-bounded right, as Justice Scalia makes clear in *Lewis v. Casey*:
>> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.
>
> *Lewis*, 518 U.S. at 355, 116 S. Ct. 2174. Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only.

*Thaddeus-X*, 175 F.3d at 391 (citations omitted).

Although Defendant contends that *Thaddeus-X* shows that prison disciplinary convictions are not covered by the holdings of *Bounds* and *Lewis*, she has cited no decisions

5

in which the Sixth Circuit or any other court has held that the First Amendment right of access to the courts does not apply in this context. As Defendant is entitled to judgment as a matter of law regardless, the Court declines to reach that issue and will assume, without deciding, that the right of access to the courts includes a prisoner's court challenge to a prison disciplinary conviction.

Defendant next argues that Plaintiff has provided no evidence that he suffered any harm as a result of missing the deadline for filing a petition for a writ of certiorari challenging his disciplinary conviction. In order to have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citing *Lewis*, 518 U.S. at 351-53); *see also Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Thus, Plaintiff is required to show that the challenge to his disciplinary conviction had a reasonable likelihood of success. *Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002).

In this case, Plaintiff has submitted no evidence whatsoever regarding the nature of his disciplinary conviction or the grounds which he sought to raise in the petition for

certiorari. Thus, he has failed to show that he suffered any actual injury from missing the deadline for filing his petition.

Defendant further contends that the undisputed evidence shows that her actions did not violate Plaintiff's right of access to the courts. In the memorandum in support of his cross-motion for summary judgment, Plaintiff gives the following timeline with regard to his claim.[3] On August 3, 2010, August 5, 2010, and August 13, 2010, he sent Inmate Requests to Defendant asking for legal forms, case citations, and other legal materials and also asking to meet with the CCA contract attorney. (ECF No. 55 at 2.) He asserts Defendant did not respond to these requests.[4] (*Id.* at 3.) Therefore, he filed a grievance on August 16, 2010, asserting that he had tried to talk to the Defendant about helping him with his legal matters but was ignored. (ECF No. 55-2.)

In a September 10, 2010, response to Plaintiff's grievance it is stated, "CCA does not allow librarians to give out legal advice. If legal advice and help is needed per the segregation handbook inmate must fill out a legal aide contact form. HCCF also has a contract attorney who comes twice a month and sees inmates upon written request." (*Id.* at 4.) On September 24, 2010, Defendant Mathews was directed to "refrain from giving legal advice to inmates and ensure that all inmates receive library services." (*Id.* at 6-7.)

---

[3] At all relevant times, Plaintiff was in administrative segregation. Inmates in segregation could still request to meet with the CCA contract attorney. (ECF No. 52-3 at 1, ¶¶ 2-4.)

[4] The Inmate Request forms are not in the record.

Plaintiff concedes that he was scheduled to meet with the CCA contract attorney on September 22, 2010, October 13, 2010, and November 10, 2010 (ECF No. 55-1), but he appears to assert that the contract attorney did not actually meet with him on any of those dates.

In Defendant's Declaration, she avers that she visited administrative segregation once a week to receive requests and provide requested materials to the inmates. Once she compiled the list of inmates in the segregation unit who were requesting to see the contract attorney, she had no further obligation and no actual authority to compel the attorney to actually meet with the inmates. (ECF No. 52-3 at 2, ¶¶ 6-7.) She further indicates that she provided legal materials to Plaintiff on several occasions, that she never refused to provide him any requested materials, and that Plaintiff never personally gave her any document to be filed with any court. (*Id.* ¶¶ 8-11.) In addition, the HCCF mailroom personnel had the responsibility for mailing documents, not the Defendant. (*Id.* ¶ 12.)

The primary thrust of Plaintiff's argument is his assertion that Defendant Mathews was obligated to either ensure the contract attorney met with him in a timely fashion or personally assist him with preparing his legal documents. However, the undisputed evidence shows that Mathews was actually prohibited by CCA from providing Plaintiff with legal advice and had no way to require the contract attorney to meet with him. Therefore, Plaintiff has failed to show that any failure on her part was the cause of his missed deadline.

The Court finds there are no genuine issues of material fact for trial in this case and that the Defendant is entitled to judgment as a matter of law. Therefore, Defendant's motion

for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma pauperis*, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Fed. R. App. P. 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed *in forma pauperis* in the district court, he may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

It is CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Plaintiff is not taken in good faith. Leave to proceed on appeal *in forma pauperis* is, therefore, DENIED. Accordingly, if Plaintiff files a notice of appeal, he must also pay the

full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                   s/ **James D. Todd**
                                   JAMES D. TODD
                                   UNITED STATES DISTRICT JUDGE